GRANGER v FRUEHAUF CORPORATION

Docket Nos. 78121, 78128. Argued May 6, 1987 (Calendar No. 13).
Decided September 10, 1987.

William Granger brought a products liability action in the Wayne
Circuit Court against the Fruehauf Corporation, seeking dam-
ages for injuries sustained in an accident involving a trailer
manufactured by the defendant, alleging negligence and breach
of an implied warranty of fitness. The court, Marianne O.
Battani, J., entered judgment on a jury verdict for the defen-
dant as to the implied warranty theory, and for the plaintiff on
the negligence claim. The Court of Appeals, MACKENZIE, P.J.,
and CYNAR and DEMING, JJ., ordered a new trial, finding the
jury's verdicts of negligence, but no breach of warranty, legally
inconsistent (Docket No. 77395). Both parties appeal.

In a unanimous opinion by Justice BOYLE, the Supreme Court
held:

The jury's finding that the defendant was negligent was not
inconsistent with its finding that the defendant did not breach
an implied warranty of fitness.

1. A jury's verdicts are not inconsistent where an interpreta-
tion of the evidence provides a logical explanation for its
findings. Every attempt must be made to harmonize a jury's
verdicts; only where verdicts are so logically and legally incon-
sistent that they cannot be reconciled will they be set aside.

2. In this case, the jury was free to accept or to reject either
party's interpretation of the evidence. The defendant both
manufactured and later resold the trailer to the plaintiff, and
therefore the jury reasonably could have concluded that the
defendant was negligent in the original design of the trailer,

REFERENCES

Am Jur 2d, Trial §§ 1154 et seq.

Products liability: inconsistency of verdicts on separate theories of
negligence, breach of warranty, or strict liability. 41 ALR4th 9.

Validity of verdict or verdicts by same jury in personal injury
action awarding damages to injured spouse but denying recovery
to other spouse seeking collateral damages, or vice versa. 66
ALR3d 472.

Inconsistency of criminal verdicts as between two or more defen-
dants tried together. 22 ALR3d 717.

while at the same time finding that, as to the intervening sale, an "as is" disclaimer negated any claim for breach of warranty. Any error due to the instruction on breach of implied warranty was harmless.

Reversed.

147 Mich App 190; 383 NW2d 162 (1985) reversed.

JURY — VERDICTS — INCONSISTENCIES.

A jury's verdicts are not inconsistent where an interpretation of the evidence provides a logical explanation for its findings; every attempt must be made to harmonize a jury's verdicts, and only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*) for the plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *John P. Jacobs* and *Ernest R. Bazzana*), for the defendant.

BOYLE, J. In this case we decide whether the jury's finding that the defendant was negligent is legally inconsistent with its finding that the defendant did not breach an implied warranty of fitness. We hold that the verdicts are not inconsistent. Accordingly, we reverse the judgment of the Court of Appeals and reinstate the judgment of the Wayne Circuit Court.

I

Plaintiff William Granger began this products liability action in Wayne Circuit Court in 1980, claiming injuries due to an alleged design defect in a trailer manufactured by defendant Fruehauf Corporation in 1969 and purchased by the plaintiff's employer in 1975. The plaintiff advanced claims on the basis of negligence and breach of an implied warranty of fitness.

The jury found for the defendant as to the plaintiff's warranty theory, but returned a verdict in favor of the plaintiff on the negligence claim. The defendant contends that the verdict of the jury is fatally inconsistent. Because the particular underlying facts are important to our resolution of this issue, we set them forth in detail.

The high-side, open-top trailer at the center of this dispute was manufactured by the defendant corporation in 1969 for a particular customer, an interstate motor carrier. The stainless steel trailer was described as being forty feet long, with double rear doors. The top of the trailer was approximately twelve feet from the ground. Such trailers are used to haul oversize cargo, i.e., cargo that is higher than the sides of the trailer, and to facilitate loading and unloading by means of a crane.

The defendant regained possession of the trailer at some point and, in 1975, resold the unit to Standard Lead Company. The plaintiff, a long-distance truckdriver for Standard Lead, also performed other jobs for the company. Important to this case, those other duties included selecting the trailer at issue and signing the purchase order. The sales contract provided that the trailer was being sold "as is."

The plaintiff alleged that he was injured on March 20, 1978, when he fell from the trailer while delivering a load of loose copper turnings (shavings) to a metal refining plant in New Jersey. According to the plaintiff, he had to climb on top of the cargo to unroll the protective tarp in preparation for unloading. Since the trailer was not equipped with a ladder, he used other means to reach the tarp.

As the plaintiff explained, he hooked the right rear door in an open position and then began his climb by stepping first onto the bumper, then onto

the trailer bed, and then onto the left door handle. At that point, in order to reach the top of the trailer, he had to push his feet into the loose copper.

According to the plaintiff, it took him about thirty minutes to unroll the tarp. During that time, a light snow turned heavy. As he was dismounting, his foot slipped on the left door handle and he fell seven or eight feet to the asphalt, striking the back of his head, his right shoulder, and his right arm.

The plaintiff said he lay on the ground for a couple of minutes and then went inside. He slept for about three-quarters of an hour, until the actual unloading began. He did not tell anyone at the refinery about his fall or injury. After sleeping eight or nine hours at a New Jersey truck center, he returned to Standard Lead via Rochester, New York, where he picked up another load.

The plaintiff alleged that as a result of his fall, he suffered a herniation or a rupture of a cervical disc. He was treated by numerous doctors and eventually underwent surgery—a cervical laminectomy—in 1979.

Trial was held in August, 1983. The plaintiff's theory, essentially, was that the trailer was negligently designed because it was not equipped with a ladder or other means of access to its top. He also theorized that the design defect constituted a breach of an implied warranty of fitness.

The defendant's theory included several points. Defendant maintained that there was no proof that the alleged accident happened the way the plaintiff said or, in fact, that it occurred at all; that neither custom nor standards called for ladders on such trailers in 1969, when the one at issue was manufactured; and that the plaintiff

purchased the trailer in 1975 "as is," i.e., without a ladder. The defendant contended that because of the plaintiff's many years of experience both in selecting trailers and in using them on the road, he ought to be considered negligent for not requesting a ladder if he thought one was necessary.

The jury was given a special verdict form. The jurors agreed with the plaintiff that the defendant had been negligent. They also concluded that the plaintiff's own negligence had contributed to his accident. Accordingly, the jury reduced the $500,000 award by fifty percent.

The defendant appealed as of right. In a unanimous opinion dated November 18, 1985, the Court of Appeals set aside the jury verdict and ordered a new trial. 147 Mich App 190; 383 NW2d 162 (1985). Relying on this Court's decision in *Prentis v Yale Mfg Co,* 421 Mich 670; 365 NW2d 176 (1984), the Court of Appeals reasoned that the jury's verdicts of negligence but no breach of warranty were legally inconsistent. The Court rejected the defendant's challenges to several other trial court rulings. The plaintiff's motion for rehearing was denied.

This Court granted both the plaintiff's and the defendant's applications for leave to appeal, in a single order dated July 23, 1986. 425 Mich 879.

II

In *Prentis,* the plaintiff sought damages for injuries suffered in an accident involving a forklift. As in the instant case, the plaintiff's claims included negligence and breach of implied warranty on the basis of an alleged design defect. The trial court refused to instruct the jury on breach of warranty, but did instruct on the theory of negligent design. The jury returned a verdict of no cause of action.

The Court of Appeals reversed on the ground that the warranty instruction should have been given.

This Court reinstated the trial court's judgment, holding that where a products liability action against a manufacturer is based upon defective design, the jury need only be instructed on a single unified theory of negligent design.[1] We noted that prior attempts by the courts of this state "to avoid both the notion of fault implicit in negligence and the harshness of no-fault implicit in absolute liability" may have caused juror confusion in cases against manufacturers "based upon allegations of defective design," *Prentis, supra*, 691. We said in *Prentis* that because the plaintiff's evidence and proofs at trial had focused on the single claim that the defendant "defectively" designed a forklift by failing to provide a slat or platform, the factual inquiry and the legal inquiry were indistinguishable. We concluded in that context that the trial court's refusal to instruct on breach of warranty was not error requiring reversal.

Mindful both of the need to preserve the vitality of the implied warranty theory of liability and of the infinite variety of circumstances which might be presented to a trial court, we carefully limited our opinion in *Prentis.* The Court of Appeals and the defendant believe, however, that our reasoning requires setting aside the jury's verdict here. The plaintiff argues that *Prentis* does not mandate that result.

We agree with the plaintiff. First, we note that the instant case is in a different procedural posture than was *Prentis.* In the latter, the trial court

---

[1] Indeed, in *Prentis, supra*, p 675, n 3, we approved the use of the recently adopted version of SJI2d 25.32 in defective design cases, and disapproved the use of SJI2d 25.22 (breach of an implied warranty) in such cases.

had refused to instruct on breach of an implied warranty, and the jury found no cause of action as to negligent design. The issue was whether the failure to instruct on warranty was error. Here, however, the trial court gave the breach of implied warranty instruction, but the jury grounded liability only on negligence.

In *Prentis,* we noted that because breach of an implied warranty of fitness in a design defect case is essentially a matter of negligence, the focus is on whether the manufacturer exercised reasonable care and reasonable safety. We observed that a trial court instruction on breach of warranty as well as on negligent design "would have been repetitive and unnecessary and could have misled the jury into believing that plaintiff could recover on the warranty count even if it found there was no 'defect' in the design of the product." *Id.,* 691-692. In the instant case, however, there is no such concern because the jury found a "defect," i.e., it found "negligence." Thus, while the issue in *Prentis* was the propriety of a unified instruction, the issue here is whether the jury verdict is supportable. If there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent.

The critical distinction between this case and *Prentis* is that the defendant here both manufactured and later resold the trailer to the plaintiff. The jury, therefore, could have found as to the intervening sale that the "as is" disclaimer negated any claim for breach of warranty, but that the defendant was negligent in the original design of the trailer.

Throughout the trial, the defendant emphasized that the plaintiff had expertise in buying trailers

that the ordinary truckdriver did not have.[2] This expertise stemmed not only from the plaintiff's duties at Standard Lead, but also from the fact that the plaintiff had his own truck leasing company and had acquired trailers for it.[3]

The defendant further emphasized that the 1975 sale to Standard Lead had been negotiated by the plaintiff and that he had signed a purchase order which provided that the trailer was accepted "as is." The purchase agreement was introduced into evidence by the defendant and was admitted, without objection. The salesman who negotiated the agreement testified as a defense witness.

The defendant's theory, as read to the jury by the trial court, stressed that there had been two separate transactions involving the trailer and the defendant, i.e., the original sale in 1969 to another customer, and the resale to the plaintiff's employer in 1975. As to the latter sale, the defendant's focus again was on the plaintiff's role in purchasing the "used equipment 'as is'" and on the plaintiff's expertise.

The plaintiff's theory did not center on the

---

[2] The defendant contends that the trial court kept from the jury the matter of the plaintiff's expertise. Defense counsel had proposed the following instruction: "As an experienced purchaser of trailers, Plaintiff is charged with full appreciation of the dangers of purchasing an open top van trailer without a ladder." The trial court believed that the point the proposed instruction was intended to convey was adequately covered by the standard jury instructions. To the extent that the defendant's proposed instruction was an accurate statement of the law, we agree that the standard instructions adequately covered the defense theory. We agree with the Court of Appeals, however, that the proposed instruction was not a completely accurate statement of the law insofar as it implied that the plaintiff would be barred from recovering any damages because of his expertise.

[3] Testimony at trial revealed that the plaintiff's relationship with Standard Lead was not simply that of employee-employer. The plaintiff was an owner-operator of the tractor he used to pull trailers for Standard Lead, and apparently leased other equipment to the company as well. Accordingly, he was paid lease and mileage fees, in addition to a salary.

separate transactions. Rather, the plaintiff focused primarily on the defendant's role as designer and manufacturer of the trailer. The plaintiff's attorney argued vigorously that a sale "as is" was important only as between commercial parties to a transaction, e.g., Fruehauf and Standard Lead, and does not affect the rights of an "end user" such as plaintiff.

The defendant submits that this focus should estop the plaintiff from distinguishing this case from *Prentis* on the basis of the "as is" clause.[4]

We know of no such rule. Rather, it is fundamental that every attempt must be made to harmonize a jury's verdicts. Only where verdicts are so logically and legally inconsistent that they cannot be reconciled will they be set aside, see, e.g., *Izzo v Weiss,* 270 Mich 372, 375; 259 NW 295 (1935), quoting from *Foster v Gaffield,* 34 Mich 356, 357 (1876), and *Gallick v Baltimore & O R Co,* 372 US 108, 119; 83 S Ct 659; 9 L Ed 2d 618 (1963).

The instant verdicts are not irreconcilable. The jury was free to accept or to reject the plaintiff's or the defendant's interpretation of the evidence. We believe that the jury reasonably could have concluded that the defendant was negligent[5] in manu-

[4] The defendant notes that the existence of the clause was the subject of an unsuccessful defense motion for dismissal of the implied warranty claim, and that the jury received no charge on the "as is" defense. Further, since the plaintiff argued that the clause was irrelevant, he should be precluded from now suggesting that the jury rejected his best efforts.

[5] The trial court instructed the jury as follows on the plaintiff's negligence claim:

The plaintiff has the burden of proving each of the following: First, that the defendant did design and manufactured a High-Side Open Top Trailer which created an unreasonable risk of harm. Second, that this risk of harm was foreseeable at the time the High Side Open Top Trailer was designed and manufactured. Third, that the defendant failed to exercise reasonable care in designing and manufacturing the High Side Open Top

facturing a trailer without a ladder in 1969, while at the same time reasoning that the plaintiff's role in the 1975 sale and the presence of the "as is" clause negated the implied warranty of fitness.[6] We will not second-guess the jury.[7]

Trailer so as to eliminate the risk of harm. Fourth, that the plaintiff was injured and sustained damage. Fifth, that the defendant's failure to eliminate this risk was a proximate cause of plaintiff's injuries and damages.

Your verdict will be for the plaintiff if you decide that all of these have been proved. Your verdict will be for the defendant if you decide that any one of these has not been proved.

[6] The trial court instructed the jury as to the implied warranty claim as follows:

When I use the words "implied warranty," I mean a duty imposed by law which requires that the manufacturer's product be reasonably fit for the purposes and uses intended or reasonably foreseeable by the manufacturer.

The plaintiff has the burden of proof on each of the following: First, that the Fruehauf High Side Open Top Trailer was not reasonably fit for the uses or purposes anticipated or reasonably foreseeable by the defendant, in one or more of the ways claimed by the plaintiff. Second, that the Fruehauf High Side Open Top Trailer was not reasonably fit for the uses or purposes anticipated or reasonably foreseeable by the defendant at the time it left the defendant's control. Third, that William Granger was injured. Fourth, that the absence of a ladder, handhold, or suitable safety device was the proximate cause of the injuries to the plaintiff.

The defendant has claimed that the plaintiff was aware of the product's defect but nevertheless unreasonably proceeded to use the product and was injured during such use. The defendant has the burden of proving this defense.

Your verdict will be for the plaintiff, if he was injured, and the product when it left the defendant's control was not reasonably fit for the uses or purposes anticipated or reasonably foreseeable by the defendant, and this was a proximate cause of plaintiff's injuries, unless the defendant's defense has been proved.

Your verdict will be for the defendant, if plaintiff was not injured, or if the product was reasonably fit for the uses and purposes anticipated or reasonably foreseeable by the defendant, or it [sic] the absence of a ladder, handhold, or suitable safety device did not exist at the time Fruehauf's High Side Open Top Trailer left the defendant's control, or if the absence of a ladder, handhold or suitable safety device was not a

### III

The defendant submits that it is entitled to a new trial even if the jury's verdicts were not fatally inconsistent because, in *Prentis,* this Court expressly disapproved of using SJI2d 25.22 (breach of implied warranty) in products liability actions based on defective design. See n 1.

We disagree. First of all, we note that this case was tried prior to the release of our opinion in *Prentis.* Second, there was no objection to the giving of SJI2d 25.22. Third, we are not persuaded that the failure to vacate the jury's verdict would be inconsistent with substantial justice. The unique facts of the instant case, especially the facts surrounding the 1975 resale, distinguish it from *Prentis* and from the usual design defect case.

Finally, we hold that any error due to the giving of SJI2d 25.22 was harmless. The essence of the unified design defect instruction which this Court approved in *Prentis* (SJI2d 25.32) is "negligence." The trial court accurately instructed the jury as to the plaintiff's negligence claim. The jury rejected the implied warranty claim.

### IV

The defendant challenges several other trial court rulings in its separate application for leave to appeal. We are not persuaded upon review of

proximate cause of the injuries or if the defendant's defense has been proved.

[7] As noted, we limited our opinion in *Prentis* to the facts of that case. We did not suggest that implied warranty and negligence are other than separate and distinct theories of recovery or that Michigan's products liability statute (MCL 600.2945; MSA 27A.2945) has merged all former products liability theories or causes of action into a single, unified theory.

the record that any warrants setting aside the jury's verdict. Accordingly, the judgment of the Court of Appeals is reversed, and the judgment of the Wayne Circuit Court is reinstated.

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, ARCHER, and GRIFFIN, JJ., concurred with BOYLE, J.