# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 28, 2016

Plaintiff-Appellee,

v

No. 325986
Oakland Circuit Court

FRANK EARL TYSON,

LC No. 2014-249733-FC

Defendant-Appellant.

Before: TALBOT, C.J., and MURRAY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b.[1] The trial court sentenced defendant, as a fourth habitual offender, MCL 769.12, to 58 months to 40 years' imprisonment for the felon-in-possession conviction and a consecutive term of five years' imprisonment for the second-offense felony-firearm conviction. We affirm defendant's convictions, but remand for a *Crosby*[2] hearing.

First, defendant asserts the inadequacy of the trial court's instruction to the jury on self-defense. Defendant specifically challenges the alleged brevity of the self-defense instruction and the failure to elucidate that the instruction was applicable to all of the weapons charges. Alternatively, defendant argues that his trial counsel was ineffective for not seeking a more "robust or specific" instruction on self-defense or requesting that the self-defense instruction be explained in greater detail as a defense to the charge of felon in possession of a firearm and the related felony-firearm charge.

---

[1] Defendant was charged with: (a) armed robbery, MCL 750.529, (b) assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, (c) felon in possession of a firearm, MCL 750.224f, and (d) three counts of felony-firearm (second offense), MCL 750.227b. The jury acquitted defendant of the charges of armed robbery, AWIGBH, and two counts of felony-firearm.

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

-1-

"To preserve an instructional error for review, a defendant must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003), disapproved on other grounds by 469 Mich 967 (2003), citing MCR 2.515(C). The trial court instructed the jury on self-defense. At the conclusion of the jury instructions, the prosecutor and defense counsel verbally indicated that they had no objections to the jury instructions as provided. This Court "has consistently held that an affirmative statement that there are no objections to the jury instructions constitutes express approval of the instructions, thereby waiving review of any error on appeal." *People v Kowalski*, 489 Mich 488, 505 n 28; 803 NW2d 200 (2011) (citations omitted). As such, defendant's claim of instructional error is waived.

"In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing. Failure to move for a new trial or for a *Ginther*[3] hearing ordinarily precludes review of the issue unless the appellate record contains sufficient detail to support the defendant's claim." *People v Sabin (On Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000) (internal citation omitted). Because defendant did not seek a *Ginther* hearing or a motion for a new trial, the issue of ineffective assistance of counsel is not preserved for appellate review. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "[A] trial court's findings of fact are reviewed for clear error . . . [q]uestions of constitutional law are reviewed by this Court de novo." *Id* (internal citations omitted). Unpreserved ineffective assistance of counsel claims are reviewed "for errors apparent on the record." *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

At the conclusion of the jury instructions, the trial court inquired of counsel whether they had any objections to the instructions, as provided. Both the prosecutor and defense counsel stated that they had no objections to the instructions. It is recognized that "[c]ounsel's affirmative expression of satisfaction with the trial court's jury instruction waived any error." *People v Chapo*, 283 Mich App 360, 372-373; 770 NW2d 68 (2009), citing *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002). "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id.* (citation omitted). In other words, "[a] defendant may not waive objection to an issue before the trial court and then raise it as an error on appeal." *Id.* at 214-215 (citation and quotation marks omitted). Because defense counsel affirmatively indicated the lack of any objection to the instructions provided by the trial court to the jury, defendant's claim of instructional error is waived. However, in conjunction with defendant's related contention regarding the ineffective assistance of counsel, the self-defense instruction will be reviewed.

---

[3] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

As discussed in *People v Mills*, 450 Mich 61, 80-81; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995) (case citations omitted):

Pursuant to MCL 768.29, the trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner. MCL 768.29 provides:

It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused.

A criminal defendant has the right to have a properly instructed jury consider the evidence against him. However, a trial court is not required to present an instruction of the defendant's theory to the jury unless the defendant makes such a request.

In addition:

Jury instructions are reviewed in their entirety to determine if error requiring reversal occurred . . . . Accordingly, jury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence. [*People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003).]

At the outset, defendant suggests that the brevity of the self-defense instruction is a component of its insufficiency. The trial court's instruction on self-defense spanned several pages of transcript. Defendant does not contend the instruction on self-defense was incorrect substantively. Rather he suggests that the error was in the trial court's failure to emphasize the applicability of self-defense to all of the weapons charges. Because defendant does not contest the accuracy of the content of the instruction on self-defense, merely the failure to identify all of the charges it was applicable to, a challenge to the length of the instruction is meritless. See *People v Bartlett*, 231 Mich App 139, 143-144; 585 NW2d 341 (1998) ("Even if somewhat imperfect, instructions do not create error if they fairly present to the jury the issues tried and sufficiently protect the defendant's rights.").

Defendant's contention of instructional error regarding the trial court's failure to explain the applicability of self-defense to the charge of felon in possession of a firearm is mistaken. When instructing the jury on self-defense, the trial court specifically mentioned the charges of assault with intent to do great bodily harm less than murder (AWIGBH) and felon in possession

-3-

of a firearm. Defendant's claim of self-defense was not applicable to the armed robbery charge. Defendant was acquitted of armed robbery and the associated felony-firearm charge. Similarly, defendant was acquitted of AWIGBH and its associated charge of felony-firearm. The trial court instructed the jury: "If a person acts in a lawful self[-]defense the person's actions are justified and he is not guilty. . . ." The acquittal of defendant of armed robbery and AWIGBH, and the associated felony-firearm charges with those offenses, belies defendant's claim that the jury misunderstood or did not fully comprehend the trial court's self-defense instruction.

As noted, to determine whether error occurred in the provision of jury instructions, the instructions are reviewed as a whole and not in a piecemeal fashion. *People v Caulley*, 197 Mich App 177, 184; 494 NW2d 853 (1992). Instructions must include all elements of the offense charged and cannot exclude materials issues, defenses or theories if evidence exists to support them. *People v Perez-DeLeon*, 224 Mich App 43, 53; 568 NW2d 324 (1997). Even if instructions are not deemed to be perfect, error is not found to exist if the instructions are fairly representative of the issues to be tried and sufficiently serve to protect a defendant's rights. *Id.*

Contrary to defendant's suggestion, the jury's verdict does not suggest an inconsistency. As discussed in *People v Vaughn*, 409 Mich 463, 466; 295 NW2d 354 (1980):

> Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jury reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release. These considerations change when a case is tried by a judge sitting without a jury. But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility.

Further, each count is viewed as a separate indictment and does not require consistency in jury verdicts. *Id.* at 465-466. It has historically been recognized that "it is possible for a jury to reach separate conclusions on an identical element of two different offenses." *People v Garcia*, 448 Mich 442, 464; 531 NW2d 683 (1995). A new trial is only warranted if the jury was confused, did not comprehend the instructions or did not know what it was doing. *People v Lewis*, 415 Mich 443, 450 n 9; 330 NW2d 16 (1982). To demonstrate jury confusion, a party is required to demonstrate and offer more evidence than simply the existence of an inconsistency in the verdict. *People v McKinley*, 168 Mich App 496, 510-511; 425 NW2d 460 (1988). "If there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent." *Granger v Fruehauf Corp*, 429 Mich 1, 7; 412 NW2d 199 (1987).

As noted, defendant was acquitted of armed robbery and AWIGBH and the associated felony-firearm charges for those offenses. Clearly, the jury must have determined either that defendant did not commit the offenses or his claim of self-defense excused his actions for these charges. Defendant was convicted of felon in possession of a firearm and the associated felony-firearm charge. The elements of felon in possession of a firearm include (1) that defendant was

in possession of a firearm and (2) that defendant had previously been convicted of a specified felony. MCL 750.224f. In this instance, a stipulation was entered that defendant had a prior felony conviction that precluded his possession of a firearm. At trial, during his testimony, defendant acknowledged disarming Milan Orr, taking the weapon, and pointing it at Orr. Defendant admitted that he did not dispose of the weapon until Orr had fled the scene. Given the stipulation and admission satisfying the requisite elements to be proven for a conviction of felon in possession of a firearm, the jury could have reasonably concluded that defendant was guilty of the charge when he retained the firearm after disarming Orr and used it to threaten Orr.

Defendant was also charged with felony-firearm in conjunction with the felon in possession of a firearm charge. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Felon in possession of a firearm can serve as the predicate felony for felony-firearm. MCL 750.227b; *People v Dillard*, 246 Mich App 163, 167; 631 NW2d 755 (2001). Based on the jury's conviction of defendant on the predicate felony of felon in possession of a firearm, the conviction on the charge of felony-firearm is both permissible and not inconsistent.

Further, even if the verdicts were to be construed as being inconsistent, defendant has failed to demonstrate that the jury was confused, did not comprehend the instructions or did not know what it was doing. *Lewis*, 415 Mich at 450 n 9. Defendant's only contention is that his acquittal of the other charges suggests the jury failed to understand that his claim of self-defense was applicable to all of the weapons charges. As noted, the trial court did specifically reference the charge of felon in possession during the instructions on self-defense. The acquittals by the jury of the predicate felonies of armed robbery and AWIGBH and the associated felony-firearm charges demonstrates a degree of understanding by the jury of the instructions provided. The trial court specifically instructed the jury on the individual charges of felony-firearm in conjunction with each of the predicate felonies associated with the charges. For instance, in conjunction with the instruction for felon in possession of a firearm, the trial court instructed the jury on the associated felony-firearm charge, stating:

> The defendant is also charged with a separate crime of possessing a firearm at the time he committed or attempted to commit the crime of felon possessing a firearm. To prove this charge the Prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant committed or attempted to commit the crime of felon possessing a firearm, which has been defined for you. It is not necessary however that the defendant be convicted of that crime. Second, that at the time the defendant committed or attempted to commit the crime he knowingly carried or possessed a firearm . . . . A firearm includes any weapon from which a dangerous object can be shot or propelled by the use of explosives, gas or air. A pistol is a firearm.

Because "there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent." *Granger*, 429 Mich at 7.

-5-

Alternatively, defendant contends that his trial counsel was ineffective for (a) failing to request a more thorough self-defense instruction referencing all of the firearm charges or (b) to seek a more "robust" instruction on self-defense.

As discussed in *People v Payne*, 285 Mich App 181, 188-189; 774 NW2d 714 (2009):

> In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court explained the test for determining whether a criminal defendant has been denied the effective assistance of counsel. A defendant must first show that defense counsel's performance was deficient and, second, that counsel's " 'deficient performance prejudiced the defense.' " *Id*. at 600 (citation omitted); see also *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Whether defense counsel's performance was deficient is measured against an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Carbin*, 463 Mich at 600.

Defense counsel identified defendant's assertion of self-defense in his opening statement to the jury. Defense counsel also successfully disputed the prosecutor's contention that self-defense was not an appropriate jury instruction because defendant's claim was that the discharge of the firearm was an accident during his struggle with Orr and that he did not have control of the weapon when it fired. In his closing argument, defense counsel also referenced self-defense, as did the prosecutor on rebuttal closing argument.

Defendant was not entitled to a self-defense instruction on the armed robbery charge because he was "engaged in the commission of a crime" when the force was used. MCL 780.972(2). As discussed, the trial court did reference the felon in possession of a firearm charge in the preface to the instruction on self-defense. Hence, in this regard, an error did not occur and counsel cannot be deemed ineffective. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant also contends trial counsel was ineffective for failing to seek a more "robust" self-defense instruction, such as CJI2d 11.34b.[4] To the extent CJI2d 11.34b is applicable, a review of the jury instructions on self-defense incorporated the provisions of the cited criminal jury instruction. Specifically, as part of the jury instructions, the trial court stated:

> Further, a person is not required to retreat if the person retreat – if the person A, has not or is not engaged in the commission of a crime at the time the deadly force is used. And B, has a legal right to be where the person is at the time. And C, has an honest and reasonable belief that the use of deadly force is

---

[4] Our Supreme Court has now mandated use of the Michigan Model Jury Instructions. MCR 2.512(D)(2).

necessary to prevent the evident death or great bodily harm of the person or another.

Thus, the jury instruction provided on self-defense, viewed in context and in its entirety, encompassed the material defendant alleges was improperly omitted due to the ineffective assistance of his counsel. Based on the inclusion of the substantive content of CJI2d 11.34b in the instruction given to the jury, defendant's contention that his trial counsel was ineffective for failing to provide a more "robust" self-defense instruction is without merit.

Next, defendant asserts that he is entitled to resentencing because the trial court's upward departure from the applicable sentencing guidelines range by 10 months was unreasonable.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). The reasons for a departure are reviewed for clear error. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). This Court reviews whether the trial court articulated a reasonable basis for the sentencing departure for an abuse of discretion. *Id.* "A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Id.*

Defendant was sentenced as a fourth habitual offender, to 58 months to 40 years' imprisonment for his felon in possession of a firearm conviction. The sentence for his felon in possession of a firearm conviction is to run consecutive to his five year sentence of imprisonment for a second-offense felony-firearm conviction. With adjustments to the scoring of several offense variables (OVs) and prior record variables (PRVs), defendant's sentencing guidelines range was 12 to 48 months' imprisonment for the felon in possession of a firearm conviction. The five-year sentence for second-offense felony-firearm is mandatory and is not disputed on appeal. MCL 750.227b.

The trial court explained its decision to depart upward from the applicable guidelines range to include consideration of the following factors: (a) defendant's probationary status at the time of the offense, (b) defendant's extensive criminal history, including nine prior felony and 15 prior misdemeanor convictions, and (c) defendant's involvement in several "serious incidences of misconduct" while jailed during the pendency of the trial in this matter. The trial court specifically opined that the guidelines did not adequately account for the elevated PRVs for defendant and his jail misconduct. The trial court indicated that in sentencing defendant it was utilizing the next "grid down" and suggested that the departure was "certainly warranted in light of his long criminal history, the jail misconducts, and being off the charts in connection with the prior record variables and the number of felonies."

Conviction for felon in possession of a firearm is punishable by imprisonment "for not more than 5 years." MCL 750.224f. The habitual offender statute, MCL 769.12(b), however, provides: "If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court . . . may sentence the person to imprisonment for life or for any lesser term." Because defendant's conviction of felon in possession of a firearm is punishable for a first conviction by a sentence of five years, the trial court could have sentenced defendant as a fourth habitual offender to life imprisonment or to any lesser term.

With regard to the minimum sentence imposed, defendant fell within the sentencing grid for Class E Offenders, MCL 777.66. His PRV score of 90 placed him at Level F. His OV score of 10 placed him at Level II. As a fourth habitual offender, the sentencing guidelines range was 12 to 48 months. Instead, the trial court sentenced defendant in accordance with PRV Level F and OV Level III, as a fourth habitual offender, to a range of 14 to 58 months.

Since defendant's sentencing, trial courts are no longer required to articulate substantial and compelling reasons to depart from an applicable guidelines range. *Lockridge*, 498 Mich at 391-392. Although courts are still required to consult, as advisory, the sentencing guidelines, a sentence must only be reasonable. *Id.* at 392. In accordance with *Lockridge*:

> In cases such as this one that involve a minimum sentence that is an upward departure, a defendant necessarily cannot show plain error because the sentencing court has already clearly exercised its discretion to impose a *harsher* sentence than allowed by the guidelines and expressed its reasons for doing so on the record. It defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory. Thus, we conclude that as a matter of law, a defendant receiving a sentence that is an upward departure cannot show prejudice and therefore cannot establish plain error. [*Id.* at 395 n 31.]

Defendant does not assert error in the scoring of the various OVs and PRVs by the trial court or the improper use of judicial fact-finding. "[A] sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation record [PSIR] . . . ." *People v Althoff*, 280 Mich App 524, 541; 760 NW2d 764 (2008) (quotation marks omitted). A PSIR "is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003). The existence of prior convictions are deemed to be an exception to the general requirement that any fact which increases the penalty for a crime must be either admitted by a defendant or found beyond a reasonable doubt by a jury. *Lockridge*, 498 Mich at 370. Consequently, defendant's issue on appeal is only whether the departure sentence was reasonable or if remand for a *Crosby* hearing is mandated.

A sentence is deemed to be reasonable if it meets the principle of proportionality test as delineated in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), superseded as stated in *Armisted*, 295 Mich App at 32. *People v Steanhouse*, 313 Mich App 1, 22; ___ NW2d ___ (2015) (leave to appeal granted, __ Mich __; __NW2d __ (Docket No. 152671) (May 25, 2016). "[A] sentence that fulfills the principle of proportionality under *Milbourn* and its progeny constitutes a reasonable sentence under *Lockridge*." *Id.*

In accordance with *Milbourn*, "the principle of proportionality . . . requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636. In other words, "the judge . . . must take into account the nature of the offense and the background of the offender." *Id* at 651. Citing *Milbourn*, the *Steanhouse* Court has discussed sentences that constitute a departure from the guidelines' recommendation, stating:

departures [from the guidelines] are appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing . . . [T]rial judges may continue to depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime. [*Steanhouse*, 313 Mich App at 22, quoting *Milbourn*, 435 Mich at 656-657].

Thus, in accordance with the proportionality test elucidated in *Milbourn*, 435 Mich at 636, 650-654, if a sentence is "proportionate to the seriousness of the circumstances surrounding the offense and the offender" it should be affirmed.

In this instance, the departure from the guidelines is 10 months. The trial court provided a thorough explanation of its reasoning based on defendant's extensive criminal history, his involvement in various incidents while incarcerated during the pendency of the trial in this matter, and the PRV score of 90, which exceeded the grid designation "75+." As a result, it seems unnecessary to have this matter remanded for resentencing because the trial court has already clearly indicated its concerns, reasoning and logic for the departure and, more importantly, because resentencing it is not necessitated by *Lockridge*, given the absence of prejudice. Our Supreme Court has specified in *Lockridge* that "a defendant necessarily cannot show plain error because the sentencing court has already clearly exercised its discretion to impose a *harsher* sentence than allowed by the guidelines and expressed its reasons for doing so on the record." *Id.*, 498 Mich 395 n. 31.

However, we must acknowledge that this Court has previously taken a contrary position on the issue of remand in a somewhat similar situation. In *People v Shank*, 313 Mich App 221, 221; ___ NW2d ___ (2015) (Docket No. 321534); lv pending (Docket No. 153000), the trial court sentenced defendant to a 12 to 25 year term of imprisonment for his felon in possession conviction when the sentencing guidelines recommended a minimum sentence of 7 to 46 months' imprisonment for that conviction. The trial court articulated reasons for the upward departure including, "that Shank did not have much rehabilitative potential since he had been frequently incarcerated for reoffending, violated probation, parole, and received misconduct citations in prison [and]. . .the concerning nature of Shank's noncriminal behavior." *Id.* at 221. This Court nevertheless remanded for further proceedings stating:

In this case, the trial court did not have the benefit of our Supreme Court's decision in *Lockridge* or this Court's decision in *Steanhouse*. Because of this fact, the trial court's sentence departure centered on the then existing substantial and compelling reason standard which was overturned by *Lockridge* . . . . Accordingly, in accordance with this Court's decision in *Steanhouse*, we remand this matter to the trial court for a *Crosby*[5] hearing. "The purpose of a *Crosby* remand is to determine what effect *Lockridge* would have on the defendant's sentence, so that it may be determined whether any prejudice resulted from the error." Also . . . defendant is provided with an opportunity to avoid resentencing

---

[5] *Crosby*, 397 F3d at 103.

by promptly notifying the trial judge that resentencing will not be sought. [Footnote added.]

In contrast, Judge O'Connell contested the necessity of a remand in his dissent in *Shank*:

> A remand under *United States v Crosby*, 397 F3d 103 (CA 2, 2005), is necessary to determine whether prejudice resulted from an error. The *Lockridge* Court stated that no prejudice could result from the type of "error" involved in this case. Shank cannot show plain error; therefore, he is not entitled to relief. I conclude that a *Crosby* remand is not appropriate or necessary in this case. [*Shank*, 313 Mich App at 316 (O'CONNELL, J. (dissenting) (footnote and citations omitted).]

We are of the opinion that where the trial court in this matter found it appropriate to sentence defendant to an upward departure of 10 months based on the more stringent "substantial and compelling reason" standard previously applicable, it would be illogical to conclude that the trial court would be inclined to impose a lesser sentence now that the sentencing guidelines are advisory only and the sentence need only be proportional to fall within the trial court's discretion. However, because we are bound to follow the precedent established by *Shank*, 313 Mich App 221, and only because we are so bound, we remand this matter to the trial court for a *Crosby* hearing.

While slightly incomprehensible, the gist of defendant's contention for his final issue on appeal is that the police investigation was inadequate and thereby deprived him of potential exculpatory evidence that would have either precluded the charges or exonerated him completely. It is assumed that the basis for this issue is defendant's request for a mistrial, which was premised on the failure of police to obtain fingerprint or blood sample results from the evidence at the scene.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). In seeking a mistrial, which the trial court denied, defendant generally raised concerns pertaining to the effectiveness of police in obtaining and preserving possible exculpatory evidence. To the extent that defendant claims the lack of effort by police to obtain and preserve exculpatory evidence, his appellate issue is preserved. For the first time, on appeal, defendant implies the prosecutor's failure to provide exculpatory evidence and a commensurate *Brady*[6] violation. This aspect of the issue is unpreserved.

"This Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). Similarly, a claim that defendant was deprived of due process due to the failure to provide exculpatory evidence also presents a constitutional question subject to de novo review. *People v Wilder*, 485 Mich 35, 40; 780 NW2d 265 (2010). To reverse a conviction based on the assertion of a due process violation requires a defendant to demonstrate that the alleged missing

---

[6] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

evidence was exculpatory or that law enforcement officials acted in bad faith. *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). "Failure to preserve evidentiary material that may have exonerated the defendant will not constitute a denial of due process unless bad faith on the part of the police is shown." *Id*. (citations omitted).

In accordance with the principles of due process, "[a] criminal defendant has a right to present a defense." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006). "Although the right to present a defense is a fundamental element of due process, it is not an absolute right." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984). In conjunction with this right, the prosecution is required to automatically disclose material, exculpatory evidence in its possession. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). "Evidence is material only if there is a reasonable probability that the trial result would have been different, had the evidence been disclosed." *People v Fink*, 456 Mich 449, 454; 574 NW2d 28 (1998) (footnote omitted). The prosecution and police are also required to preserve "potentially exculpatory evidence" in their possession. The failure, however, to preserve such evidence only violates the defendant's right to due process when the prosecution or police act in bad faith. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *Anstey*, 476 Mich at 460-461; *People v Hunter*, 201 Mich App 671, 677; 506 NW2d 611 (1993).

While his argument is unclear, defendant appears to contend that the failure to have the broken portions of a lamp collected as evidence at the scene available for presentation at trial negatively affected his ability to present a defense. Defendant's version of the events indicated that India Hollis had taken a broken lamp, which was on the porch, and used it to strike Orr during his scuffle with defendant. Oakland County Sheriff Deputy Todd Hunt confirmed the presence of broken ceramic shards and their collection into evidence, as did Deputy Kevin Braddock, with photographs of the shards admitted at trial as an exhibit. Clearly, there was no dispute regarding the existence of the ceramic shards and defendant fails to explain how the physical presence of this evidence would have been either exculpatory or more persuasive to the jury regarding his version of how the events transpired. Because evidence of the broken lamp or ceramic pieces was discussed at trial and photographs of the evidence admitted, the absence of the physical evidence did not preclude defendant from presenting a defense.

Defendant also alludes to a *Brady* violation by the prosecutor in failing to provide defendant with exculpatory evidence. It is, however, problematic that defendant fails to identify any particular evidence deemed to be exculpatory that was improperly withheld. Consequently, "[d]efendant has not properly presented this issue for appellate review. An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Defendant also asserts that the police should have developed other evidence, including the collection and analyzation of blood samples found at the scene. Defendant fails to differentiate between a duty to disclose evidence and a duty to find evidence to disprove a victim's claims. See *People v Coy (After Remand)*, 258 Mich App 1, 22; 669 NW2d 831 (2003). "[T]he police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence." *Anstey*, 476 Mich at 461. In the circumstances of this case, defendant's

contention regarding the failure to obtain exculpatory evidence is particularly unavailing. Defendant does not dispute that a physical altercation occurred at the scene with Orr and that both men incurred injuries that bled. As such, the collection of blood evidence was unnecessary as it was acknowledged that an altercation occurred and who was injured. Defense counsel was able, through the questioning of witnesses, to attack the credibility of Orr by obtaining testimony regarding the absence of beer bottles at the scene and Amelia Howard's denial of any expectation that she would be babysitting Hollis's children. Simultaneously, defense counsel was able to elicit testimony to bolster defendant's credibility regarding the presence of ceramic shards to substantiate his version of how events transpired.

In the absence of "a showing of suppression of evidence, intentional misconduct, or bad faith," due process does not require that the prosecution seek and find exculpatory evidence or test evidence for a defendant's benefit. *Coy*, 258 Mich App at 21. There is no basis in the record for finding any bad faith or intentional misconduct by the police or the prosecution, or that any evidence was suppressed. Furthermore, there is no requirement that the prosecution must negate every reasonable theory consistent with a defendant's innocence. *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). As a result, defendant's right to due process was not violated by omissions or deficits in the police investigation or by the prosecution's alleged, but unsubstantiated, suppression of evidence.

We affirm defendant's convictions, but remand to the trial court for a *Crosby* hearing. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Deborah A. Servitto

-12-